[Civ. No. 22302. Second Dist., Div. Two. June 25, 1957.]

DOLORES R. GONZALEZ, Respondent, v. GUILLERMO GONZALEZ, Appellant.

J. Widoff and J. Edward McCurdy for Appellant.

David C. Marcus for Respondent.

ASHBURN, J.—Defendant appeals from an interlocutory judgment of divorce granted to his wife. The disposition of two parcels of real property is the major alleged grievance of appellant. They stood of record in the names of both spouses as joint tenants and were impliedly found to be community property (written findings were waived), and were distributed as such, each party being awarded one parcel. Appellant says that if he had not failed to appear at the trial following a continuance from Friday afternoon to Monday morning and had his attorney been granted a continuance from Monday morning to the afternoon of that day, his testimony (if given) would have produced a different result and therefore there was grievious error in denying that continuance. He raised the point upon motion for new trial, apparently under the heading of accident and surprise which ordinary prudence could not have guarded against.

The trial commenced on the afternoon of Friday, August 3, 1956, at which time defendant was present. The wife then testified that the two parcels of real estate were purchased from earnings of both spouses and, though the deeds ran to them as joint tenants, there was an express oral agreement in each instance that same were and should be community property. At the close of the afternoon the judge announced that he would put the case over to 10:45 o'clock on Monday morning. Defendant understands English well and uses it

fluently. There was a court interpreter present who had assisted the wife when testifying. When the judge announced the adjournment the interpreter translated it into Spanish, which is apparently the language defendant claims to know.

Though the case had been continued to 10:45 on Monday morning it was not called until 11:40. At that time defendant's attorney told the court: "Your Honor please, my client, Mr. Gonzalez, although I told him to be here at ten-thirty this morning apparently something has happened. He has not called and he is not here. I called my office and they called his place of business and he is not there and they did not expect him until afternoon; therefore, I ask the matter be continued over to this afternoon until I can find out about him. THE COURT: The motion for a continuance will be denied. We will continue on as far as we can." After the evidence of plaintiff and her son had been completed and plaintiff had rested, defendant's counsel addressed the court as follows: "Your Honor please, my client is not here. I don't know what happened to him. THE COURT: Do you want a continuance to two o'clock? MR. GRAY: I will have to, your Honor please. MR. MARCUS: Your Honor, I have been ordered to appear at two o'clock in another matter, and he has not seen fit to appear here this morning. . . . THE COURT: I don't know whether it will do any good to go over to two o'clock under the circumstances. MR. GRAY: I don't know either. I don't know whether he will be here, but I cannot enter into any stipulation that the matter may be decided on the evidence before the Court. THE COURT: The record shows your position." The court then announced its ruling, said that the "community property of the parties is awarded as follows" and made division of real estate as above indicated.

Upon motion for new trial defendant appeared through a substituted attorney and presented his own affidavit in which he averred: "That affiant does not understand English very well and for that reason affiant did not understand what the Court said on Friday, August 3, 1956, in regard to the continuance of the case, and affiant did not understand that the Court had continued the case to August 6, 1956, at 10:45 A. M. in Department 50." He then stated that his attorney had said to come to see him on Monday but that he thought it was merely for a conference and not for the purpose of appearing in court. No corroborating affidavit of that attorney was presented and the foregoing statement is in conflict with that made by counsel in open court on Friday afternoon.

Appellant's affidavit further said: "Affiant did not appear in his attorney's office on August 6, 1956, because affiant was ill and had a dizzy spell when he woke up that morning." Respondent presented an opposing affidavit in which she said that defendant has lived in the United States continuously since 1915, had attended three years of junior high school and two years of high school and speaks English fluently; that she and defendant were living in the same apartment; that they conversed about the continuance of the hearing on Saturday, August 4th; that defendant was not ill on Monday morning, but worked that day; that after that Monday hearing she asked him why he did not appear in court and "[h]e stated that he did not appear in Court because he did not want to listen to your affiant's testimony, nor would he listen to his son's testimony; that they were telling lines [sic] and that he could send both your affiant and their son Billie to jail, and because he did not want to send them to jail he did not appear in Court."

Concerning the status of the property defendant's affidavit was confined to conclusions, saying: "Affiant further avers that all of the real property is owned by the parties as joint tenants and is joint tenancy property." Also, "that in truth and in fact the two parcels of real property owned by the parties are both owned as joint tenancy property, and title thereto is vested in the parties as joint tenants, and, for that reason it is believed, and affiant therefore alleges, that the said property is not community property, but is the separate property of the parties, as joint tenants, and that the Court would have no jurisdiction to change the status of said property." On the contrary, plaintiff's affidavit reiterated her testimony, saying: "Your affiant alleges that the title to the real property was taken in joint tenancy for convenience only; that she testified in these proceedings that it was understood between the parties that said real property was the community property of the parties; that said property was acquired from the community earnings of both your affiant and the defendant; . . . that her earnings were invested in the community property and pooled with that of the defendant; that as a matter of truth and in fact all of the property acquired by the parties was from their community earnings and is the community property of the plaintiff and defendant."

The briefs herein are unique in that the total number of citations of precedents is exactly one,—*Jaffe* v. *Lilienthal,*

101 Cal. 175 [35 P. 636], upon which appellant relies. It there competently appeared that plaintiff was physically unable to be present at the trial, that his attendance was essential to his cause, and a refusal of the continuance was held erroneous. That situation bears little resemblance to the one at bar. ■ Volume 12, California Jurisprudence 2d, section 4, page 116: "There are three fundamental principles running throughout the decisions on the question of continuance: (1) postponements are granted at the discretion of the trial court; (2) the trial court's determination will not be reversed except upon a clear showing of abuse; and (3) each case must be decided upon its own facts. The trial court has a first-hand knowledge of the circumstances of the case and of all previous proceedings, and is therefore in a better position to determine the propriety of granting the application than is an appellate court. It follows that a litigant has no absolute right to a continuance. ■ The fact, for example, that a party is ill or unavoidably detained does not necessarily compel the court to grant a continuance. This rule applies with equal force where the continuance is requested on the ground that counsel or an essential witness is unable to be present." (See also *McElroy* v. *McElroy*, 32 Cal.2d 828, 832 [198 P.2d 683].)

Appellant further asserts that the real property awarded to plaintiff is worth $5,000 more than that assigned to him. The evidence does not support this claim, which necessarily goes back to the assertion of error in refusal of the continuance. ■ It also assumes that there was an obligation on the court to divide the property evenly, an erroneous assumption, for plaintiff was awarded a divorce on the ground of cruelty and was entitled to as much more than one-half of the community property as a sound discretion exercised by the trial judge might indicate. (Civ. Code, § 146; 16 Cal. Jur.2d, § 297, p. 595.)

■ It is further said that the impressing of a lien upon the real property awarded defendant, as security for payments of alimony and support of the minor son, was unnecessary and unduly impairs the value of defendant's property. That it was appropriate appears from testimony that defendant had expressed the intention to sell his property and go to Mexico where he apparently had a woman friend. The son testified that "he said my mother wants the separation and he wants to go to Mexico." The respondent's affidavit on motion for new trial: "It is true that the defendant

had on numerous occasions stated to your affiant that he desired to return to Mexico and would sell the properties and reside there permanently.'' There was no error in the method adopted by the court for securing the payment of support money. (See Civ. Code, § 140; 16 Cal.Jur.2d § 237, p. 527.)

Judgment affirmed.

Moore, P. J., and Fox, J., concurred.